T.C. Memo. 2005-125

UNITED STATES TAX COURT

TIMOTHY DEAN STRONG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

STRONG CONSTRUCTION CO., INC., A MINNESOTA CORPORATION,
Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 821-01, 2048-01.     Filed May 26, 2005.

Thomas E. Brever, for petitioners.

John C. Schmittdiel, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined deficiencies in petitioners' Federal income tax, additions to tax, and penalties as follows:

Timothy Dean Strong--docket No. 821-01

|  |  |  | In the alternative | |
|  |  | Penalty | Penalty | Addition to Tax |
| Year | Deficiency | Sec. 6663 | Sec. 6662 | Sec. 6651(a)(1) |
| 1990 | $9,768 | $7,326.00 | $1,953.60 | $2,442.00 |
| 1991 | 11,185 | 8,388.75 | 2,237.00 | 2,796.25 |
| 1992 | 19,794 | 14,845.50 | 3,958.80 | 4,948.50 |
| 1993 | 31,567 | 23,675.25 | 6,313.40 | 7,891.75 |
| 1994 | 6,613 | 4,959.75 | 1,322.60 | N/A |

Strong Construction Co., Inc.--docket No. 2048-01

|  |  | In the alternative | |
|  |  | Addition to Tax | Addition to Tax |
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(1) |
| 1990 | $6,257 | $4,693 | $1,564 |
| 1991 | 6,925 | 5,194 | 1,731 |
| 1992 | 12,871 | 9,653 | 3,218 |
| 1993 | 25,783 | 19,337 | 6,446 |
| 1994 | 5,090 | 3,818 | N/A |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect during the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:

1. Whether petitioner Strong Construction Co., Inc. (SCC), should be recognized as a taxable entity. We hold SCC is a taxable corporate entity;

2. whether SCC had additional income from sales of houses it constructed during the years 1990-94 (the years at issue) and from unidentified taxable sources, as established on the basis of deposits to petitioner Timothy Dean Strong's (Mr. Strong) joint

bank account with SCC.  We hold with certain specific exceptions that SCC did have the additional income determined by respondent;

3.    whether SCC is entitled to expenses for construction costs and general and administrative expenses related to its homebuilding business during the years at issue in excess of those allowed by respondent.  We hold SCC is entitled to deduct certain expenses as redetermined herein;

4.    whether Mr. Strong had additional income for the years at issue for constructive dividends from SCC, deposits of SCC's funds for his personal use, and the corporation's payment of his personal expenses.  We hold he did as redetermined herein;

5.    whether Mr. Strong is liable for the fraud penalty under section 6663 on his underpayment of tax for each of the years at issue.  We hold he is;

6.    whether SCC is liable for the addition to tax under section 6651(f) for fraudulent failure to file timely on its underpayment of tax for each of the years at issue.  We hold that SCC is not liable for the section 6651(f) addition to tax; and

7.    alternatively, whether SCC is liable for the addition to tax under section 6651(a)(1) for failure to file timely tax returns.  We hold that SCC is liable for the section 6651(a)(1) addition to tax.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing his petition in this case, Mr. Strong resided in Clear Lake, Minnesota. At the time of filing its petition, SCC had its principal place of business, mailing address, and registered office in Minnesota.

SCC

SCC was incorporated under Minnesota law in 1986, and as of December 31, 1994, had not been formally dissolved. At all times relevant, Mr. Strong was the 100-percent owner of SCC. He was its incorporator, director, and president. During the years at issue, SCC had no officers except Mr. Strong and had no employees.

During the years at issue, SCC was engaged in the residential construction business and built and sold houses under the names Strong Construction or Strong Construction Co., Inc. SCC constructed and sold the following houses (the 22 house sales):

## 1990

| Date  | Property (Buyer)     | Sale Price |
|-------|----------------------|------------|
| 7/5   | 10925 Osage Street   | $59,900    |
| 7/5   | 10929 Osage Street   | 64,600     |
| 10/12 | 10901 Osage Street   | 64,900     |
| 12/10 | 374 Rose Avenue East | 75,400     |
| Total |                      | 264,800    |

## 1991

| Date  | Property (Buyer)       | Sale Price |
|-------|------------------------|------------|
| 1/17  | 12166 Wedgewood Drive  | $88,000    |
| 1/30  | 10905 Osage Street     | 64,000     |
| 4/5   | 16051 Andrie Street    | 116,960    |
| 6/28  | 767 99th Lane, NE      | 87,760     |
| 7/26  | 1755 124th Avenue, NW  | 84,000     |
| 9/6   | 1737 McKnight          | 84,000     |
| Total |                        | 524,720    |

## 1992

| Date  | Property (Buyer)       | Sale Price |
|-------|------------------------|------------|
| 2/20  | 1761 County Road F     | $89,000    |
| 4/2   | 3242 129th Lane        | 85,000     |
| 4/13  | 3854 120th Avenue, NW  | 78,000     |
| 7would be one word | 12154 Wedgewood Drive | 92,900 |
| 7/23  | 11900 NE Kerry Street  | 91,000     |
| 11/18 | 818 Meander Street     | 96,000     |
| Total |                        | 531,900    |

## 1993

| Date  | Property (Buyer)     | Sale Price |
|-------|----------------------|------------|
| 10/27 | 14671 Helium Street  | $85,448    |
| Total |                      | 85,448     |

## 1994

| Date | Property (Buyer) | Sale Price |
|------|------------------|-----------|
| 8/30 | 14685 Iodine Court | $117,600 |
| 9/27 | 4412 Josephine Lane North | 103,766 |
| 10/7 | 5661-146th Circle | 115,000 |
| 10/25 | 4265 Victoria Street | 121,880 |
| 11/22 | 7096 Progress Road | 73,150 |
| Total | | 531,396 |

During the years at issue, Mr. Strong had signatory authority over bank account No. 893315300 at First Bank, Coon Rapids, Minnesota (later known as Marquette Bank Coon Rapids). This account bears his name and that of SCC. The net proceeds from the 22 house sales during the years at issue were paid by checks issued to SCC and deposited in account No. 893315300. SCC did not file Federal or State income tax returns for the years 1990-94. Mr. Strong considered SCC funds deposited into account No. 893315300 to be available for his personal use.

## Mr. Strong's Income Tax Returns

Mr. Strong filed his 1990, 1991, and 1993 Forms 1040, U.S. Individual Income Tax Return, on March 23, 1995. He filed his 1992 Form 1040 on March 2, 1995, and he timely filed his 1994 return. For each of the years 1990-94, the returns filed by Mr. Strong reflect negative taxable income. These tax returns all included a Schedule C, Profit or Loss From Business (Sole Proprietorship), which identified his principal business as "construction". These Schedules C reflect the following gross receipts, expenses, and net profits or losses:

| Item | 1990 | 1991 | 1992 | 1993 | 1994 |
|------|------|------|------|------|------|
| Gross receipts or sales | $20,100 | $24,150 | $26,210 | $47,934 | $81,640 |
| Returns & allowances | --- | --- | --- | 2,110 | --- |
| Net sales | --- | --- | --- | 45,824 | --- |
| Cost of goods sold | --- | --- | --- | 29,151 | 66,204 |
| Gross profit | --- | --- | --- | 16,673 | 15,436 |
| Total expenses | 19,642 | 24,818 | 24,970 | 30,016 | 15,436 |
| Net profit (loss) | 458 | (668) | 1,240 | (13,343) | -0- |

The Forms 1040 Mr. Strong filed reflect a $65 tax liability based on self-employment tax in 1990 and a $175 self-employment tax liability in 1992. Mr. Strong reported no other tax on the Forms 1040 for 1990-94.

Mr. Strong's Initial Contacts and Discussions With A Revenue Officer

In late 1991, Mr. Strong was contacted by an Internal Revenue Service (IRS) revenue officer. The purpose of this contact was to inquire regarding Mr. Strong's unpaid income tax liabilities for 1987 and 1988 and his unfiled income tax returns for 1989 and 1990. Mr. Strong refused to provide the revenue officer with any personal or financial information, but he told the revenue officer that he expected his tax liabilities for 1989 and 1990 to be at least $50,000. In a later conversation, Mr.

Strong informed the revenue officer that the reason he was delinquent in filing his tax returns was that he could not access records held by his ex-spouse. This statement was inaccurate since his former spouse did not have any of his records.

Return Preparation

Mr. Strong's tax returns for 1990 and 1993 were signed by D. R. Newman (Mr. Newman) as the paid tax return preparer on April 10 and 21, 1994, respectively. His 1991, 1992, and 1994 tax returns were executed by D. Wade (Ms. Wade) as the paid tax return preparer. Ms. Wade dated her signature on the 1991 return February 21, 1995, and dated the 1994 return February 15, 1995.

Mr. Strong initially had Mr. Newman prepare his tax returns for 1990-93. Mr. Newman prepared those returns from information and documents provided to him by Mr. Strong. Mr. Newman gave the completed tax returns along with the provided documents back to Mr. Strong in April 1994. Mr. Newman did not discuss the tax returns with him upon completing and providing them to Mr. Strong. Mr. Strong did not provide Mr. Newman with bank statements, deposit slips, or canceled checks to prepare his tax returns.

Without the knowledge of Mr. Newman, Mr. Strong altered or caused to be altered the amounts shown on the 1990 return prepared by Mr. Newman before he filed the return. He also caused the 1991 and 1992 returns originally prepared by Mr.

Newman to be changed by Ms. Wade.  Mr. Strong instructed Ms. Wade to change the figures shown on the 1991 and 1992 returns as originally prepared using handwritten sheets he gave her.  Ms. Wade changed the figures on the 1991 tax return by covering the original numbers with correction fluid and writing new numbers over them because she did not have a 1991 form at the time she revised the return.  She redid the 1992 return, but on a clean form.  The changes Mr. Strong instructed Ms. Wade to make to the 1991 and 1992 tax returns, originally prepared by Mr. Newman, reduced the reported Schedule C profit on each return.  Ms. Wade also prepared Mr. Strong's 1994 income tax return from a sheet of paper provided to her that contained the income and expense figures she placed on the return.

The Audit of Mr. Strong's Income Tax Returns

In September 1995, respondent notified Mr. Strong that his 1990 and 1991 Federal income tax returns were under examination, and in a meeting on November 30, 1995, at his residence, a revenue agent advised him that his 1992, 1993, and 1994 returns were also under review.  In response to requests for his bank and business records, Mr. Strong provided only handwritten summaries of settlement sheets for five houses sold in 1991 and 1992.  Respondent's revenue agent obtained information regarding the construction business by issuing summonses under section 7602 for

SCC's bank records and for settlement statements from title companies for the houses that had been sold by SCC.

After the revenue agent's preliminary findings were provided to Mr. Strong, reconstructed financial statements for SCC for the years 1991, 1992, 1993, and 1994 were presented to the revenue agent by Mr. Frazier, an accountant who had been engaged by Mr. Strong.

Respondent used the financial statements provided by Mr. Frazier as the starting point for determining SCC's taxable income for the years at issue. Respondent determined that SCC was not entitled to deduct all the expenses shown on the financial statements prepared by Mr. Frazier. Respondent also analyzed deposits in bank account No. 893315300 to determine SCC's taxable income in addition to the identified deposits of sales proceeds of houses.

The following shows the deposits to account No. 893315300 that remain in dispute[1]:

---

[1]Respondent conceded that a deposit of $6,000 on Dec. 4, 1990, was a loan from Mr. Strong's father and that a deposit of $1,000 on June 2, 1992, was a loan from Mr. Strong's parents.

| Payor | 1990 Date Deposited | Amount Deposited |
|---|---|---|
| Cash in ticket | 1/2 | $1,000.00 |
| Vincent Kurkowski | 1/2 | 240.00 |
| Cash in ticket | 1/24 | 2,200.00 |
| Cash in ticket | 2/6 | 3,500.00 |
| Cash in ticket | 2/10 | 4,700.00 |
| Cash in ticket | 2/27 | 9,850.00 |
| Cash in ticket | 2/13 | 7,200.00 |
| Cash in ticket | 3/5 | 9,900.00 |
| Cash in ticket | 3/8 | 4,900.00 |
| Ken Jeanotte | 3/13 | 9,900.00 |
| Unknown | 3/15 | 4,500.00 |
| Ken Jeanotte | 5/25 | 9,900.00 |
| Ken Jeanotte | 6/5 | 9,900.00 |
| Gordon Schnobrich | 6/22 | 312.00 |
| Gordon Schnobrich | 7/5 | 304.80 |
| Gordon Schnobrich | 7/17 | 170.00 |
| Cash in ticket | 12/3 | 1,400.00 |
| Wesley Strong | 12/4 | 6,000.00 |
| Total other deposits | | 85,876.80 |

| Payor | 1991 Date Deposited | Amount Deposited |
|---|---|---|
| Scherer Brothers Lumber | 1/30 | $144.45 |
| Bradley or Mary Lathrop | 4/30 | 100.00 |
| Cash in ticket | 6/14 | 4,000.00 |
| Cash in ticket | 7/12 | 9,900.00 |
| Cash in ticket | 12/17 | 5,300.00 |
| Todd Peterson | 12/17 | 2,000.00 |
| Cash in ticket | 12/18 | 6,000.00 |
| Total other deposits | | 27,444.45 |

| Payor | 1992 Date Deposited | Amount Deposited |
|---|---|---|
| Cash in ticket | 1/2 | $4,600 |
| Cash in ticket | 1/28 | 6,560 |
| Cash in ticket | 2/5 | 9,000 |
| Cash in ticket | 2/14 | 3,200 |
| Cash in ticket | 2/14 | 3,400 |
| Cash in ticket | 3/17 | 3,000 |
| Cash in ticket | 3/23 | 5,000 |
| Gene or Sharon Strong | 6/2 | 1,000 |
| Total other deposits | | 35,760 |

| Payor | 1993 Date Deposited | Amount Deposited |
|---|---|---|
| Cash in ticket | 1/19 | $3,000 |
| Cash in ticket | 1/29 | 4,000 |
| Harstad Companies | 2/17 | 100 |
| Harstad Companies | 2/17 | 250 |
| Cash in ticket | 3would be one word | 3,000 |
| Cash in ticket | 3/22 | 2,000 |
| No bank info. | 3/24 | 5,000 |
| Cash in ticket | 4/2 | 5,000 |
| Cash in ticket | 4/22 | 9,900 |
| Cash in ticket | 4/23 | 9,850 |
| Cash in ticket | 4/28 | 9,900 |
| Cash in ticket | 5/19 | 7,000 |
| Cash in ticket | 6would be one word | 4,000 |
| Cash in ticket | 6/21 | 5,000 |
| Cash in ticket | 7/2 | 8,000 |
| Cash in ticket | 7/15 | 11,000 |
| Cash in ticket | 8/3 | 5,000 |
| No bank info. | 8/24 | 9,900 |
| No bank info. | 8/24 | 9,900 |
| Cash in ticket | 9/22 | 6,000 |
| Cash in ticket | 10/15 | 4,450 |
| Cashier's check - Rodney Nelson | 10/18 | 4,000 |
| Total other deposits | | 126,250 |

| Payor | 1994 Date Deposited | Amount Deposited |
|---|---|---|
| Stephen Roche Homebuilders | 3/16 | $444 |
| North Metro Auto Salvage | 3/16 | 75 |
| Sean Strong for #7 | 3/16 | 500 |
| Stephen Roche Homebuilders | 3/24 | 988 |
| No info. available from bank | 5/13 | 5,000 |
| Keith E. Hagford | 5/27 | 500 |
| Burnet trust acct./ Hagford earnest | 6/20 | 500 |
| Jack W. Thompson | 8/10 | 8,500 |
| Sean Strong/personal | 8/16 | 8,500 |
| Criston or Ann Holst/Iodine | 10/5 | 225 |
| Total other deposits | | 25,232 |

On March 13, 1990, Mr. Strong deposited $9,900 into account No. 893315300. The deposit was cashier's check No. 6724 in the amount of $9,900 issued by First National Bank Anoka-Brooklyn Park-Champlin (First Bank), which identifies the purchaser as Ken Jeanotte (Mr. Jeanotte). On May 25, 1990, Mr. Strong deposited $9,600 in account No. 893315300, after taking $300 cash back. The deposit was cashier's check No. 6726 in the amount of $9,900 issued by First Bank, which also identifies the purchaser as Mr. Jeanotte. On June 5, 1990, Mr. Strong deposited $9,500 into account No. 893315300, after taking $400 cash back. The deposit was cashier's check No. 6725 in the amount of $9,900 issued by First Bank, which also identifies the purchaser as Mr. Jeanotte. Mr. Jeanotte did not purchase cashier's check No. 6724, 6725, or 6726 deposited to account No. 893315300 and did not pay Mr. Strong the $29,700 those checks represent. Mr. Strong used Mr. Jeanotte's name without his knowledge or permission.

On July 19, 1994, Mr. Strong obtained two cashier's checks issued by Norwest Bank each in the amount of $8,500. The first made payable to Mr. Strong shows the payor was his brother, Sean Strong and was deposited to account No. 893315300 on August 16, 1994. The second was made payable to Mr. Strong, and Jack Thompson, the payor, is unidentified. It was deposited into account No. 893315300 on August 10, 1994.

Before 1990, Mr. Strong was aware of the title 31 requirements that currency transactions in excess of $10,000 be reported to the Government.

SCC's Activity

During the years at issue, SCC entered into vacant land purchase agreements and acquired real property in its name. Mr. Strong signed the purchase agreements as president of SCC. As part of the sales process, SCC entered into new construction purchase agreements with buyers. SCC also applied for building permits, which Mr. Strong signed as president of SCC. In addition, SCC entered into a builder's security agreement and applied for a home buyer's warranty on some of the 22 house sales. SCC was identified as the seller of the property on the settlement statements or closing statements prepared for the real estate property closings for the 22 house sales. Mr. Strong executed those statements as president of SCC. For the purpose of passing title to real property, Mr. Strong executed, as

president of SCC, affidavits regarding the good standing of SCC. SCC issued deeds for the 22 houses. Mr. Strong executed those deeds as president of SCC. Finally, during the years at issue and thereafter, SCC filed various notices with the Minnesota secretary of state.

Mr. Strong's Bankruptcy Filing

In March 1990, Mr. Strong, doing business as Strong Construction, filed for relief under chapter 7 of the Bankruptcy Code. In his bankruptcy petition, which Mr. Strong signed under penalties of perjury, he made the following representations:

a. That his current monthly gross income was zero and that his current monthly expenses were $1,319. He also stated that "debtor had been living off proceeds from sale of personal property, which proceeds are now exhausted";

b. that he had been engaged in the construction business under the name "Strong Construction" and that all books of account and records were kept and maintained by him, that they were available, and that none had been destroyed;

c. that he had received no income other than from the operation of his business in the 2 years preceding the filing of the bankruptcy petition;

d.   that he was not holding property for another person and that no other person was holding property for him;

e.   that the only real property in which he had an interest was his residence at 7090 107th Avenue, Clear Lake, Minnesota, and that the value of his interest therein was $30,000;

f.   that he had no cash on hand, and the market value of any interest he had in stock or interests in incorporated or unincorporated companies was zero.  He reported only $3,500 in personal property on his bankruptcy petition; and

g.   he reported liabilities of $199,581.38.

Mr. Strong attended a meeting of creditors under 11 U.S.C. section 341 on June 15, 1990.  The trustee reported that after diligent inquiry, she had located no property belonging to the bankruptcy estate.  A discharge was granted Mr. Strong on August 15, 1990.  Robert Munns (Mr. Munns) represented Mr. Strong as his attorney in his 1990 bankruptcy filing.  Mr. Munns prepared the bankruptcy petition and accompanying schedules using information Mr. Strong provided to him.  Mr. Munns reviewed Mr. Strong's bankruptcy petition with him before filing it.  Mr. Strong did not inform Mr. Munns that he had a large accumulation of cash on hand.  Mr. Munns did not advise Mr. Strong that he did not have

to report cash on hand, or corporation stock, which he held when he filed for bankruptcy in 1990.

Other Circumstances Related to Cash Available

Mr. Strong entered the Navy on December 5, 1974, and was discharged on June 9, 1976. The highest rank he attained was E-1, which paid a monthly salary of $361.20 in 1976. After discharge from the Navy, he attended vocational school and was trained as a machinist. He then worked as a machinist for a couple of years and later moved into the home construction business.

Mr. Strong was married to Anna Lisa Strong (Mrs. Strong) from 1978 to 1989; the couple separated in 1986. He was divorced from Mrs. Strong in August 1989. That proceeding was brought by Mrs. Strong in 1987. Mr. Strong did not disclose in that proceeding his interest in any real estate (except for 7090 107th Avenue, Clear Lake, Minnesota) or his interest in any cash on hand. Petitioner paid child support to his ex-wife during the years 1991-94.

Between 1978 and 1989, Mr. Strong and his then wife acquired and relinquished title to various real estate parcels. In 1983 and 1984, Mr. Strong and his then wife lost at least three properties in foreclosure actions. Mr. Strong filed his 1981-85

income tax returns jointly with his then wife; they reported the following adjusted gross income and taxable income on those returns:

| Year | Adjusted Gross Income | Taxable Income |
|------|----------------------|----------------|
| 1981 | $35,266 | $24,184 |
| 1982 | 32,636 | 15,314 |
| 1983 | 20,917 | 2,765 |
| 1984 | 21,371 | -0- |
| 1985 | 3,170 | -0- |

Mr. Strong's Prior Year Returns

Mr. Strong filed his 1986 Federal income tax return in March 1990 with the following details: (1) His filing status on that return was married filing separate; (2) he claimed exemptions for his three children; (3) he reported adjusted gross income of $31,952; (4) he claimed itemized deductions of $6,826; and (5) he reported taxable income of $17,526. The reported tax liability of $2,105 was not paid until August 1991. He filed his 1987 Federal income tax return in March 1990 with the following details: (1) His filing status on that return was married filing separate; (2) he claimed exemptions for his three children; (3) he reported adjusted gross income of $11,976; (4) he claimed itemized deductions of $5,875; and (5) he reported taxable income of zero. The reported self-employment tax liability of $1,116 was not paid until April 1992. Mr. Strong filed his 1988 Federal income tax return in March 1990 with the following

details:  (1) His filing status on that return was married filing separate; (2) he claimed exemptions for his three children; (3) he reported adjusted gross income of $8,867; (4) he claimed itemized deductions of $4,127; and (5) taxable income of zero. The reported self-employment tax liability of $1,153 was not paid until April 1992.  Mr. Strong did not file a Federal income tax return for 1989.

Respondent's Income Determinations

Respondent determined in the notice of deficiency that SCC was a taxable corporate entity and determined SCC's net taxable income in the years 1990-94.  These determinations are disputed as to the status of SCC as a taxpayer, the gross income, and the allowable expenses.  Respondent also determined in a separate notice of deficiency that Mr. Strong received constructive dividend income in the full amount of SCC's net income.  Both SCC and Mr. Strong timely filed petitions with this Court.

OPINION

I.  Is SCC A Taxable Entity?

SCC and Mr. Strong argue that SCC should be ignored for tax purposes and was not a separate taxable entity apart from Mr. Strong.  A corporation is a separate taxable entity if it was formed for a business purpose and engaged in business activity. See Moline Props., Inc. v. Commissioner, 319 U.S. 436, 439 (1943); Strong v. Commissioner, 66 T.C. 12, 23-24 (1976), affd.

553 F.2d 94 (2d Cir. 1977). SCC was a valid Minnesota corporation. More critical to this question, SCC was engaged in the construction business and houses were sold in its name during the years in question. SCC was jointly listed with Mr. Strong on account No. 893315300 where the receipts in dispute were deposited. Checks for house sales were issued with SCC as the payee. Mr. Strong chose to operate the construction business through a corporation, not a sole proprietorship. Under these facts, SCC must be recognized as a distinct taxable entity.

II. SCC's Unreported Income and Expenses

The extent of SCC's taxable income is a separate issue. There are two distinct questions in this regard. First, should the unreported deposits be treated as income, and second, should SCC be allowed deductions against its income in addition to those allowed by respondent?

A. Construction Income

The parties stipulated that the construction business earned gross income of $264,800 in 1990, $524,720 in 1991, $531,900 in 1992, $85,448 in 1993, and $531,396 in 1994 from the construction and sale of houses. This business was conducted in SCC's name, and the deposits of proceeds from these home sales should be included in SCC's gross income.

B.    Unidentified Deposits

The question whether the unidentified deposits to the First Bank account are income to SCC merits further discussion.  The record reflects deposits were made to account No. 893315300 in addition to the amounts traced to specific home sales. Respondent conceded that two of these deposits were loans from Mr. Strong's parents but asserts that the rest of these deposits were income to SCC and Mr. Strong.

Many of the deposits in dispute were of currency or were completely unidentified.  Other deposits were by check purportedly from various individuals or entities.  Respondent asserts that Mr. Strong used nominee names to hide his own identity on some of the deposited cashier's checks, such as the three checks from Mr. Jeanotte in 1990 and two checks from his brother, Sean Strong, in 1994.

Because of Mr. Strong's inadequate records, respondent reasons under the bank deposits method of proof that these deposits are construction receipts absent evidence of any nontaxable source of the deposits.  Respondent cites DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Clayton v. Commissioner, 102 T.C. 632 (1994); Tokarski v. Commissioner, 87 T.C. 74 (1986); and Nicholas v. Commissioner, 70 T.C. 1057 (1978).  We agree with respondent that unless petitioners have shown that the funds came from nontaxable

sources, they are taxable to SCC.  Dodge v. Commissioner, 981 F.2d 350, 353 (8th Cir. 1992), affg. in part, revg. in part and remanding in part 96 T.C. 172 (1991).  Petitioners argue that the deposits in question were from cash that Mr. Strong accumulated over the years.

SCC clearly had a taxable source of income as it was in the construction business during the years at issue.  The amounts were deposited to bank account No. 893315300, as were the proceeds from the 22 house sales.  Mr. Strong did not point to any source for the deposits other than his previously accumulated funds.

Mr. Strong alleges he began to accumulate cash through gambling winnings during his service in the U.S. Navy in the mid-1970s.  He claims to have maintained a substantial cash hoard throughout his marriage from 1978 to 1989 and during his filing under chapter 7 of the Bankruptcy Code in 1990.  Mr. Strong's assertions are not credible for several reasons.  First, Mr. Strong was unable to explain specifically how the cash was obtained, where it was maintained, its amount after 1978, and how it was used.  He stated that he was basically guessing when asked to specify what amounts he had on hand at any particular point. On cross-examination regarding the nature of his cash hoard, Mr. Strong refused to be specific and continually changed his story. For example, he stated that he did not add to his cash

accumulation for 6 years, from 1982 through 1988. Later, upon being questioned by the Court, Mr. Strong stated that he did add to his cash accumulation during that period. Still later, Mr. Strong decided that his cash accumulation would have been in one of three bank accounts. We construe against him Mr. Strong's failure to provide adequate details regarding his cash hoard. "We are not required to accept implausible, uncorroborated, and incoherent contentions as to the existence of a cash hoard." Daniels v. Commissioner, T.C. Memo. 1992-692.

Second, even though Mr. Strong was married during the period he held his cash hoard, his ex-wife was unaware that it existed. His ex-wife testified that the couple did not have an excess of cash during the 8 years they were living together. Further, Mr. Strong did not disclose the existence of the cash hoard upon their divorce, even though he stated under penalties of perjury in that proceeding that he had disclosed all assets.

Third, Mr. Strong's liabilities are inconsistent with his claimed cash hoard. For instance, Mr. Strong and his then wife lost at least three properties through foreclosure from December 1986 through February 1988. Such a forfeiture is inconsistent with the existence of a cash hoard. See Holland v. United States, 348 U.S. 121, 133 (1954). Mr. Strong also borrowed $10,000 in 1991 to purchase equipment and allegedly borrowed $6,000 from his father in December 1990. Mr. Strong specifically

testified that he borrowed from his father in 1990 because he "was short on cash".  Borrowing money and incurring interest charges are inconsistent with sitting on a large amount of unproductive cash.  Thomas v. Commissioner, 223 F.2d 83, 88 (6th Cir. 1955), revg. a Memorandum Opinion of this Court; Daniels v. Commissioner, supra.

Fourth, Mr. Strong's prior years' tax returns are inconsistent with his claim that the cash hoard came from previously taxed income.  From 1981 through 1989, he reported taxable income of $59,789, an average of $6,643 per year.[2]  The largest taxable income he reported was $24,184 in 1981, and in 1984, 1985, 1987, 1988 and 1989, he reported zero taxable income. This was at the same time he was supporting three children.  Mr. Strong's reported income from 1981 to 1989 is not sufficient to live on, much less accumulate a large cash hoard.  See Holland v. United States, supra.

Finally, Mr. Strong filed for chapter 7 bankruptcy protection in March 1990.  In his bankruptcy case, he represented that the sum total of his assets equaled $33,500, including his homestead valued at $30,000.  He alleged he had no cash on hand and no interest in any corporation.  These representations plainly contradict his current assertion that his cash deposits during the years at issue were from cash on hand at the beginning

---

[2]SCC reported no taxable income during this same period.

of 1990. Mr. Strong testified that he made these representations on the advice of his bankruptcy counsel. Mr. Strong's bankruptcy counsel, Mr. Munns, plainly denied that charge in his testimony. Mr. Munns unequivocally stated that he did not inform Mr. Strong that cash on hand or the value of a corporation did not have to be reported in bankruptcy. Mr. Munns also stated that Mr. Strong failed to inform him that he had a significant amount of cash on hand.

In conclusion, we reject Mr. Strong's cash hoard explanation for the unidentified deposits. Respondent also asserts judicial estoppel as a result of the representations in the bankruptcy filing. Because we reject Mr. Strong's claims of a cash hoard, it is unnecessary for us to reach this argument.

The burden is on SCC to establish that the deposits in dispute were not income. "Once the deposits were shown to be in the nature of income and to exceed what the taxpayers had reported as income, it became the taxpayers' responsibility to persuade the trier of fact the deposits were nontaxable." Dodge v. Commissioner, 981 F.2d at 354. In addition to Mr. Strong's claim of a cash hoard, SCC argues that two of the deposits were not taxable to SCC. The first is a deposit of $8,500 on August 10, 1994, which Mr. Strong claims was payment for the sale of a motorcycle. In that instance, we accept the corroborating testimony of Mr. Strong's then girlfriend and hold that the

$8,500 was not income to SCC.  The second is a deposit of $8,500 on August 16, 1994, which Mr. Strong claims was payment for the sale of his truck to his brother.  In this instance, SCC has not carried its burden.  Mr. Strong provided testimony from his brother that the $8,500 deposit was payment for a pickup truck.  However, this testimony is inconsistent with the records of the Minnesota Department of Motor Vehicles regarding the ownership of the truck in question, and we find this testimony unconvincing.  SCC does not provide any explanation for the remaining deposits, and we conclude that these deposits are income to SCC.

C.  Allowable Expenses of SCC

Section 162(a) allows a taxpayer deductions for ordinary and necessary business expenses incurred during the taxable year in carrying on a trade or business.  Deductions, however, are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Generally, a taxpayer must establish that deductions taken pursuant to section 162 are ordinary and necessary business expenses and must maintain records sufficient to substantiate the amounts of the deductions claimed.  Sec. 1.6001-1(a), Income Tax Regs.

With respect to certain business expenses specified in section 274(d), more stringent substantiation requirements apply.  Section 274(d) disallows deductions for travel expenses, gifts,

meals, and entertainment, as well as for listed property defined by section 280F(d)(4), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) The amount of the expense; (2) the time and place of the expense; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of the persons involved in the expense.

SCC argues that many of the expenses paid by Mr. Strong out of account No. 893315300 were deductible business expenses of SCC. For 1990, SCC's financial statement provided to the revenue agent during respondent's audit of SCC did not include an accountant's compilation of expenses paid from account No. 893315300; instead, it estimated SCC's costs using industry standards and information available from closing statements. For 1991-94, respondent allowed SCC expenses based upon financial statements including accountant's compilations of expenses for those years. Respondent allowed SCC expenses for 1990 on the basis of the information in the financial statement, adjusted by SCC's average actual gross profits percentage taken from the 1991-94 accountant's compilations.

Mr. Strong testified that he paid some of his personal expenses, including child support, medical fees, clothing purchases, restaurant charges, magazine subscriptions, and

groceries, for 1991-94 by issuing checks from account No. 893315300.

There are seven general categories of additional disputed expenses that were paid out of account No. 893315300 which we will discuss: (1) Advertising or promotional expenses; (2) professional fees; (3) travel expenses; (4) automobile and truck expenses; (5) office supplies and general supplies; (6) utility expenses; and (7) miscellaneous expenses.

### 1. Advertising or Promotional Expenses

Expenses for the promotion or sponsorship of activities not directly related to a taxpayer's business are deductible if the taxpayer can establish a proximate relationship between the activity and the taxpayer's business such that the sponsorship was reasonably calculated to advertise the business. Gill v. Commissioner, T.C. Memo. 1994-92, affd. without published opinion 76 F.3d 378 (6th Cir. 1996).

SCC advertised its business primarily either through word of mouth or by athletic sponsorships. As part of the athletic sponsorships, SCC paid for the uniforms, logo design, hats, t-shirts, sweat pants, coats, bags, and pants for all players on its sponsored teams. In addition, SCC made monetary donations for high school wrestling organizations and would provide equipment and league/tournament fees for its sponsored athletic teams.

SCC claimed that the expenses for advertising were deductible as ordinary and necessary business expenses. Respondent determined that SCC was not entitled to deduct these expenses as shown on the financial statements and the accountants' compilations provided by SCC and adjusted these expenses in determining SCC's tax liabilities for the years at issue. SCC's canceled checks supported many of these promotional expenses. In addition, members of SCC's sponsored teams testified credibly to substantiate the expenses. Accordingly, we conclude the amounts of the following advertising or promotional expenses for the years 1991, 1992, 1993, and 1994 were ordinary and necessary expenses of SCC:

<u>1991</u>

| Date | Expense | Amount |
|------|---------|--------|
| 1/2 | Letterman Sports | $50.00 |
| 1/2 | Letterman Sports | 644.80 |
| 2/2 | A & B | 42.38 |
| 2/4 | Gladiators | 74.00 |
| 2/27 | Letterman Sports | 186.00 |
| 2/27 | SRO Softball | 320.00 |
| 3/23 | USA Wrestling | 30.00 |
| 4/9 | SRO Softball | 615.00 |
| 4/10 | SRO Softball | 320.00 |
| 4/19 | Letterman Sports | 297.75 |
| 5/7 | Dave's Sports | 73.62 |
| 5/8 | Letterman Sports | 50.00 |
| 5/15 | Athlete's Foot | 37.09 |
| 5/17 | USA Wrestling | 10.00 |
| 5/17 | USA Wrestling | 20.00 |
| 6/5 | Letterman Sports | 95.40 |
| 6/13 | Letterman Sports | 271.75 |
| 6/19 | Letterman Sports | 50.00 |
| 8/13 | Letterman Sports | 48.00 |
| 9/12 | SRO Softball | 225.00 |

## 1991

| Date | Expense | Amount |
|------|---------|--------|
| 12/11 | Herman's Sports | $89.35 |
| 12/11 | Dave's Sports | 47.94 |
| 12/14 | Broomball League | 60.00 |
| 12/19 | Herman's Sports | 285.39 |
| 12/23 | Dave's Sports | 100.00 |
| 12/23 | Dave's Sports | 169.26 |
| 12/23 | Herman's Sports | 63.88 |
| Total | | 4,276.61 |

## 1992

| Date | Expense | Amount |
|------|---------|--------|
| 1/9 | Herman's Sports | $32.37 |
| 1/14 | Dave's Sports | 385.00 |
| 1/31 | State Broomball | 185.00 |
| 2/3 | Butch Salzinger | 800.00 |
| 2/29 | Radisson (Broomball) | 132.69 |
| 3would be one word | Radisson (Broomball) | 104.81 |
| 3/14 | D. Stecker (Softball) | 3,900.00 |
| 4/10 | Butch Salzinger (Hats) | 185.40 |
| 4/13 | Herman's Sports | 51.99 |
| 5/19 | Letterman Sports | 429.75 |
| 6/10 | Letterman Sports | 78.00 |
| 6/10 | Wal-Mart (Balls) | 12.32 |
| 6/17 | Letterman Sports | 102.00 |
| 6/17 | Mardi's Embroidery | 480.25 |
| 9/27 | Slow Pitch MN | 112.00 |
| 12/10 | Dave's Sports | 287.64 |
| 12/11 | St. Francis Wrestling | 250.00 |
| 12/20 | 4 Seasons Broomball | 60.00 |
| Total | | 7,589.22 |

## 1993

| Date | Expense | Amount |
|------|---------|--------|
| 1/23 | Herman's Sports | $149.97 |
| 1/24 | Mardi's Embroidery | 180.00 |
| 2/06 | Marc Washburn | 80.00 |
| 3/05 | Mardi's Embroidery | 294.00 |
| 3/11 | MN Sports Federation | 63.00 |
| 4/15 | City of Coon Rapids | 846.00 |

## 1993

| Date | Expense | Amount |
|------|---------|--------|
| 4/16 | MN Liquor Liability | $200.00 |
| 4/21 | City of Coon Rapids | 60.00 |
| 4/22 | Janet Cullen | 1,000.00 |
| 6/5 | MN Recreation Assn. | 125.00 |
| 6/7 | A & B Sporting Goods | 21.29 |
| 8/10 | City of Coon Rapids | 100.00 |
| 12/03 | Sports Connection | 75.00 |
| Total | | 3,194.26 |

## 1994

| Date | Expense | Amount |
|------|---------|--------|
| 3/7 | Elk River Wrestling | $105.00 |
| 11/16 | A & B Sporting Goods | 118.42 |
| 4/21 | C.R. Athletic Assn. | 300.00 |
| Total | | 523.42 |

### 2. Professional Fees

Mr. Strong claimed accounting and legal expenses of $3,410 and $4,790 for 1993 and 1994, respectively. Of these amounts, respondent allowed $575 and $790 for 1993 and 1994, respectively, as miscellaneous itemized deductions for tax preparation fees paid to Mr. Newman. The remaining $2,835 for 1993 and $4,000 for 1994 are in dispute. Mr. Strong testified that the $2,835 was paid to Michael Scott, an attorney, for title clarification in connection with one of SCC's business properties. In addition, Mr. Strong testified that the $4,000 was paid to Craig Cascorono, an attorney, also with respect to title issues concerning SCC's business properties. Mr. Strong testified that SCC often had to retain attorneys in order to make sure its properties had valid

titles from the city council before building on them.  Respondent argues that legal expenses relating to title issues are not deductible as ordinary and necessary business expenses but should be added to the basis of each property to which they relate.

We agree with respondent.  The cost of defending or perfecting title to property constitutes a capital expenditure and no deduction shall be allowed for it.  Estate of Franco v. Commissioner, T.C. Memo. 1980-340; Cowden v. Commissioner, T.C. Memo. 1965-278, affd. per curiam 365 F.2d 832 (1st Cir. 1966); sec. 1.263(a)-2(c), Income Tax Regs.  The only evidence presented by Mr. Strong and SCC shows that these legal fees were for defending or perfecting title.  In his testimony, Mr. Strong did not relate these expenses to specific properties sold during the years at issue.  Therefore, the legal fees of $2,835 and $4,000 paid in 1993 and 1994, respectively, are not currently deductible to SCC.

### 3. Charitable Contributions

SCC claimed deductions for charitable contributions of $73.14 for 1991, $220 and $80 for 1992, and $80 for 1993.  Of these amounts, respondent allowed only the $80 charitable contribution for 1992.  Respondent contends that SCC failed to provide the required documentation to substantiate the remaining charitable deductions.

Under section 1.170A-13(a)(1), Income Tax Regs., a taxpayer is required to maintain for each charitable contribution a canceled check, a receipt from the donee organization, or other reliable written records of the contribution.  Because Mr. Strong presented copies of canceled checks for the $73.14 in 1991 and $80 in 1993, we conclude that SCC is allowed these charitable contributions.  However, because Mr. Strong failed to substantiate the $220 contribution, we conclude that SCC is precluded from deducting the $220 for the year 1992 as a charitable contribution.

### 4.  Travel Expenses

SCC claimed travel expenses for the years 1991-94 of $1,914.59, $397.79, $148.62, and $1,045.67, respectively. Respondent disallowed these travel expenses.

In order to substantiate a deduction by means of adequate records, a taxpayer must maintain a diary, log, statement of expenses, trip sheet, or similar record, and documentary evidence which, in combination, are sufficient to establish each element of each expense or use.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Accordingly, no deduction for expenses under section 274(d) may be allowed on the basis of any approximation or the unsupported testimony of the taxpayer.  See, e.g., Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969).

Here, although Mr. Strong testified to some of the travel expenses and provided copies of some canceled checks, SCC did not provide adequate substantiation to meet the strict requirements of section 274(d). The record does not include any receipts, vouchers, itineraries, diaries, logs, or calendars made in connection with the alleged travel expenses, nor any other evidence sufficient to corroborate Mr. Strong's testimony. Accordingly, we sustain respondent's determinations with respect to these travel expenses for the years 1991 through 1994.

5. <u>Miscellaneous Expenses</u>

a. <u>Office Supplies and General Supplies Expenses</u>

SCC contests respondent's disallowance of the deductions claimed for office supplies and general supplies incurred for 1991, 1992, 1993, and 1994 of $797.96, $611.16, $396.12, and $1,102.14, respectively. Of these amounts, respondent allowed $326 for 1991, $495.52 for 1992, $386.66 for 1993, and $518.01 for 1994.

However, SCC contends that it is entitled to additional office and general supplies expenses that were not allowed by respondent. SCC offered as proof only copies of canceled checks. The canceled checks do not show in any detail the items purchased or the business purpose for the items, as required to substantiate the claimed deductions. See sec. 1.162-17, Income

Tax Regs.  Therefore, we cannot allow SCC deductions for these expenses.

### b.  Automobile and Truck Expenses

SCC claims deductions for automobile and truck expenses for 1991, 1992, 1993, and 1994 of $686.56, $572.66, $27, and $1,239.93, respectively.  Respondent allowed SCC automobile and truck expenses for only the years 1992 and 1994 of $469.35 and $320.91, respectively.  Respondent disallowed the remaining automobile and truck expenses because of failure to substantiate that the amounts were expended for business use.  SCC did not offer any evidence at trial or present any argument on brief regarding these amounts.  Accordingly, respondent's determination on these remaining items is sustained.

### c.  Utility and Telephone Expenses

SCC claimed utility expenses for the years 1991-94 of $3,704.50, $3,314.11, $1,669.92, and $4,692.60, respectively. Respondent concedes that SCC may deduct $3,609.20, $2,873.73, $912.20, and $3,118.61, respectively for 1991-94.  SCC has failed to present any evidence to substantiate entitlement to the remaining disallowed deductions.  Accordingly, respondent's determination on these items is sustained.

In addition, SCC claimed telephone expenses for the 1992 tax year of $665.53.  Respondent concedes that SCC may deduct $355.77.  SCC failed to present any evidence at trial or present

any argument on brief regarding the additional amount. Accordingly, respondent's determination on the remaining claimed deduction is sustained.

### d.  Miscellaneous Expenses

As to SCC's other deductions (i.e., entertainment, insurance, and rent), Mr. Strong was not able to proffer any documentation to substantiate that the purpose of these expenses was for business.  Mr. Strong attributes the lack of substantiation to two fires that resulted in the loss of his receipts, but his general attitude regarding Federal income taxes and his lack of credibility leave us with no reason to believe receipts were ever maintained.

Even if we were persuaded that some portion of these expenses was for business purposes, Mr. Strong has not offered any evidence that would support his allocation of expenses or otherwise allow the Court to reach an alternate determination under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Thus, with regard to these additional expenses for which there are no adequate receipts, SCC's claim fails for lack of substantiation.

## III.  Constructive Dividends to Mr. Strong

Respondent argues that the unreported business income of SCC, measured by the deposits into account No. 893315300, is taxable to Mr. Strong as constructive dividend income because Mr.

Strong freely used the money for personal expenses.  Petitioners do not address respondent's argument.

If a controlling shareholder diverts corporate income to his own use, the diverted funds are generally treated as constructive dividends for tax purposes.  DiLeo v. Commissioner, 96 T.C. at 883.  A dividend is any distribution of property made by a corporation to its shareholders out of its earnings and profits. Sec. 316(a).  Where a corporation makes a distribution to a shareholder that serves no legitimate corporate purpose and results in an economic benefit to the shareholder, the payment is a constructive dividend to the benefited shareholder. Commissioner v. Riss, 374 F.2d 161, 167 (8th Cir. 1967), affg. in part, revg. in part and vacating in part T.C. Memo. 1964-190; see also Meridian Wood Prods., Inc. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984).  However, the fact that certain payments are not deductible by a corporation as business expenses does not automatically make them taxable to the shareholder.  Dolese v. United States, 605 F.2d 1146, 1152 (10th Cir. 1979); Falsetti v. Commissioner, 85 T.C. 332, 356-357 (1985); Ashby v. Commissioner, 50 T.C. 409, 418 (1968).  To the extent the payments do not represent some direct benefit to the shareholder, they are not taxable to him.  See Ashby v. Commissioner, supra.

Some of the income deposited into account No. 893315300 was used by Mr. Strong for SCC's legitimate business expenses.

Respondent allowed some of these expenses in the notice of deficiency, and we have identified additional promotional expenses in section II.C.1., above. In addition, although SCC may not deduct certain capital legal fees, see supra section II.C.2., we are convinced that those items were of no personal benefit to Mr. Strong. These items, which are not constructive dividends to Mr. Strong, are $2,835 in 1993 (check No. 6834) and $4,000 in 1994 (check No. 7763).

Either the remaining income items disallowed as deductions to SCC were used by Mr. Strong for personal benefit or he has failed to show that they were not so used. He made no distinction between SCC's funds and his own, by his own admission. He paid child support, medical bills, clothing, groceries, travel, and other personal expenses directly out of account No. 893315300. In addition to failing to properly substantiate his travel expenses, he has not shown that the travel expenses were not personal. He has failed to establish that the remaining nondeductible corporate expenditures had any legitimate corporate purpose and were not for his benefit.

In summary, the deposits into account No. 893315300 determined to be taxable to SCC are taxable to Mr. Strong as constructive dividends, less the amounts of (1) the expenses allowed by respondent, (2) the promotional expenses we have held

in section II.C.1. and 3. above are deductible by SCC, and (3) the items we have determined have no benefit to Mr. Strong in this section. IV.  Penalties and Additions to Tax

A.  Fraud Penalty Under Section 6663--Mr. Strong

Respondent determined that Mr. Strong is liable for the fraud penalty under section 6663 for each of the years 1990, 1991, 1992, 1993, and 1994.  Respondent must show by clear and convincing evidence that Mr. Strong fraudulently intended to underpay his taxes in each year in issue in order to prove that he is liable for the fraud penalty under section 6663.  See sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1113 (1983).  For Federal tax purposes, fraud entails intentional wrongdoing with the purpose of evading a tax believed to be owing.  See Neely v. Commissioner, 85 T.C. 934, 947 (1985).  In order to show fraud, respondent must prove:  (1) An underpayment exists and (2) Mr. Strong intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

1.  Underpayment

We have found above that SCC received construction income in each of the years 1990-94 and that Mr. Strong used most of the construction income for his personal expenses.  Neither SCC nor Mr. Strong paid Federal income tax on the additional construction

income.  Therefore, both SCC and Mr. Strong underpaid their taxes for 1990-94.

### 2.  Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts.  Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent.  Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include:  (1) Understating income; (2) maintaining inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of income or assets; (6) failing to cooperate with tax authorities; (7) filing false documents; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activities; (11) attempting to conceal illegal activity; (12) an intent to mislead which may be inferred from a pattern of conduct; and (13) lack of credibility of the taxpayer's testimony.  Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  Niedringhaus v. Commissioner, supra at 211.

Mr. Strong consistently understated his income while spending SCC's construction income on his personal expenses during the years in issue. During these same years, Mr. Strong reported minimal taxable income, if any, and at most $81,640 in gross receipts from the construction business. Mr. Strong's personal tax returns also do not take into account any of the funds he used for personal expenses.

Mr. Strong did not keep adequate records of the expenses he claims were related to SCC's business. His claim of a cash hoard that he periodically deposited into account No. 893315300 was an implausible explanation of the unreported construction income. His purported explanation, if true, is an admission that he defrauded his creditors and lied to his attorney during his bankruptcy proceedings by denying the existence of the cash he claims was hidden under his house. During an inquiry by respondent's revenue agent, Mr. Strong refused to provide the revenue agent with any personal or financial information and lied about his access to records. During the later audit, he provided detailed financial records only after respondent obtained third party records by summons. Mr. Strong knowingly filed false tax returns for each year at issue. His patterns of depositing cash in amounts less than $10,000 and understating the construction income in each year show that he intended to conceal the income he appropriated from his construction business. We did not find

Mr. Strong's testimony credible and do not accept his explanation for the income deposited into his bank account. He admitted in his testimony that he considered the money in account No. 893315300 his personal funds. The factors indicating fraud weigh heavily against Mr. Strong. Respondent has shown by clear and convincing evidence that Mr. Strong fraudulently underpaid his taxes for 1990, 1991, 1992, 1993, and 1994. Therefore, he is liable for the fraud penalty under section 6663 for each year in issue.

B.   Additions to Tax for Failure To File--SCC

Respondent asserts that SCC is liable for the addition to tax under section 6651(f) for fraudulent failure to file a return, or, in the alternative, that SCC is liable for the addition to tax for failure to file a return under section 6651(a)(1) for each of the years 1990, 1991, 1992, 1993, and 1994. Corporations subject to taxation must file Federal income tax returns. Sec. 6012(a)(2). If a corporation fails to file a return, the Commissioner may impose an addition to tax of 5 percent per month of the amount of tax required to be shown on the return, to a maximum of 25 percent. Sec. 6651(a)(1). If the failure to file is fraudulent, the addition to tax is increased to 15 percent per month of the tax required to be shown on the return, to a maximum of 75 percent. Sec. 6651(f). We consider the same factors under section 6651(f) that are considered in

imposing the fraud penalty under section 6663.  Clayton v. Commissioner, 102 T.C. 632, 653 (1994).

A corporation can act only through its officers and does not escape responsibility for acts of its officers performed in that capacity.  DiLeo v. Commissioner, 96 T.C. at 875.  It follows that corporate fraud necessarily depends upon the fraudulent intent of the corporate officers.  Id.  In determining whether SCC acted with the requisite fraudulent intent, we must consider the actions of Mr. Strong, SCC's president and sole shareholder. The pertinent questions are:  (1) Whether Mr. Strong had sufficient control of the corporation that his fraudulent acts should be imputed to the corporation and (2) whether Mr. Strong was acting on behalf of, and not against the interests of, SCC. See Ruidoso Racing Association, Inc. v. Commissioner, 476 F.2d 502, 506 (10th Cir. 1973), affg. in part and remanding in part on another ground T.C. Memo. 1971-194; Botwinik Bros., Inc. v. Commissioner, 39 T.C. 988, 996 (1963); Federbush v. Commissioner, 34 T.C. 740, 750 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Moore v. Commissioner, T.C. Memo. 1977-275, affd. 619 F.2d 619 (6th Cir. 1980).

Mr. Strong was the sole shareholder, officer, and director of SCC and had control over its activities.  He diverted proceeds for his own use that belonged to SCC.  Given Mr. Strong's limited education, lack of tax experience, and existence as SCC's only

shareholder, we are not convinced that he fully understood that SCC's corporate form required a separate tax return.  In fact, Mr. Strong formed SCC as a corporation because his attorney recommended it.  It has not been shown that Mr. Strong had any expertise in keeping corporate books and records, or that his attorney or accountants instructed him in filing corporate returns.  As a result, respondent has not shown by clear and convincing evidence that Mr. Strong's fraudulent intent extended beyond his desire to conceal income with respect to his personal income tax returns or that SCC's failure to file tax returns was fraudulent.

However, it is clear from the record that SCC did not file Federal income tax returns for 1990-94 without any reasonable explanation.  Therefore, SCC is liable for the addition to tax under section 6651(a)(1) for failure to file returns.

To reflect the foregoing and concessions by the parties,

Decisions will be entered

under Rule 155.